IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHIRLEY J. HOLMES,                          :

      Plaintiff,                          :

vs.                                         :        CA 08-0114-C

MICHAEL J. ASTRUE,                          :
Commissioner of Social Security,
                                            :
      Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. 636(c), for all proceedings in this Court. (Docs. 15 & 16 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the administrative record, plaintiff's brief, the defendant's brief, and the parties' arguments at the

September 17, 2008 hearing before the Magistrate Judge, it is determined that the decision to deny benefits should be affirmed.[1]

Plaintiff alleges disability due to bilateral knee osteoarthritis and lumbar degenerative disc disease. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3.      The claimant has the following severe impairments: lumbar degenerative disc disease and bilateral knee osteoarthritis (20 CFR 404.1520(c)).**
>
> **4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**
>
> **5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to sit for 2 hours at a time, stand for 2 hours at a time, walk for 2 hours at a time, sit for 8 hours during an 8-hour workday, stand for 8 hours during an 8-hour workday, walk for 8 hours during an 8-hour workday, continuously lift up to 25 pounds, frequently lift up to 10 (sic) pounds and occasionally lift up to 100 pounds, continuously carry up to 20 pounds, frequently carry up to 25 pounds and occasionally carry up to 50 pounds. The claimant can use her hands for repetitive actions such as simple grasping, pulling (sic) and pulling of arm controls and fine manipulation. She can use both her feet for**

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 15 & 16 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

**repetitive movements as in pushing and pulling of leg controls. She can frequently bend, squat, crawl and climb and continuously reach. The claimant has moderate restriction of activities involving being around moving machinery and driving automotive equipment and no restriction of activities involving exposure to marked changes in temperature and humidity and exposure to dust, fumes and gases.**

This assessment is supported by the consultative evaluation of Dr. William Crotwell as well as by the treatment records and opinions of the claimant's two treating orthopedists. In addition, this assessment is consistent with the claimant's physical therapy records. As such, the Administrative Law Judge finds that the opinions of Drs. Granberry and Seldomridge, both of whom are the claimant's treating orthopedist[s], are entitled to controlling weight. The Administrative Law Judge rejects the physical capacities evaluation and assessment of pain form allegedly completed by Dr. Granberry. The reasons that these documents are not given controlling weight are set forth below.

.        .        .

On August 29, 2003, Springhill Memorial Hospital personnel saw the claimant in the emergency room following a fall at work. The claimant complained of an injury to the left knee, left thumb, along with shoulder and knee pain. On exam, her left anterior knee was tender but not swollen and she had full range of motion with no deformity.

.        .        .

On February 28, 2004 and April 1, 2004, Healthsouth personnel performed a comprehensive functional evaluation on the claimant. The results of this evaluation indicated that the claimant demonstrated the ability to lift in the "medium" category according to the Department of Labor. She demonstrated the ability to safely lift 56 pounds on an

occasional basis but was unable to lift on a frequent basis secondary to excessive increase in heart rate. She also demonstrated the ability to sit on a constant basis, walk and stand on a frequent basis, stair climb, trunk bend, reach overhead, squat, kneel, stoop, crouch and ladder climb on an occasional basis, while she refused to crawl. She was given the physical demand category of medium work, which the U.S. Department of Labor, Dictionary of Occupational Titles describes as exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects (Exhibit 5F).

On June 30, 2004, Dr. Raymond E. Fletcher, a board certified orthopedic surgeon, evaluated the claimant to determine any ongoing residuals and work status related to the work injury of August 29, 2003. The claimant complained of left knee pain. A repeat left knee MRI scan on May 5, 2004 revealed healing of the osteochondral lesion, attenuation of the medial meniscus and arthrosis. Light-duty work was not available. At the time of the exam she was undergoing physical therapy to include modalities and therapeutic exercise. She was receiving treatment for obesity and hypertension. She complained of left knee pain mostly at the patellofemoral and medial compartments. The left knee pain was aggravated by repetitive bending/stooping and prolonged standing/walking. The impressions of her examination were work injury, American Red Cross, work injury diagnosis of permanent aggravation of osteoarthrosis of the left knee. She had left knee arthroscopy on October 22, 2003 to include removal of loose bodies, drilling of osteochrondral defect and debridement with excellent results. The evaluation revealed that the subjective complaints correlated with the objective findings. The subjective complaints were supported by some abnormal musculoskeletal findings. The claimant's described work impairment somewhat correlated with the work impairment found during this evaluation. The evaluation did not correlate with the described need for the assistive device (cane). There was no specific evidence of secondary pain. It was felt

4

that the claimant would reach maximum medical improvement in 4 weeks and be able to return for full duty following 4 more weeks of physical therapy (Exhibit 6F).

Records from Dr. William C. Hicks, III, one of the claimant's treating physicians and a board certified internist, show treatment of the claimant for osteoarthritis, hypertension, type 2 diabetes and bilateral knee pain. An examination of the claimant on September 2, 2004, was carried out by Dr. Hicks and his assessments were bilateral crepitus in both knees from osteoarthritis, which is worsened by obesity. . . .

Dr. Hicks's treatment records reflect no opinion of disability.

.     .     .

Dr. Michael L. Granberry, a board certified orthopedic surgeon, treated the claimant from October 17, 2003 until May 4, 2006 for a work-related injury to her left knee. The injury occurred on August 29, 2003. Surgery was performed by Dr. Granberry on October 22, 2003 to correct this injury. By November 20, 2003 Dr. Granberry had released the claimant to light duty (Exhibit 10F, p.35). On January 8, 2004, Dr. Granberry modified his release of the claimant to light duty by adding: no bending, squatting, or kneeling (Exhibit 10F, p.32).

On September 2, 2004 Dr. Granberry indicated that the claimant was at maximum medical improvement with 15% impairment rating on her knee. Dr. Granberry's recommendations at that time were weight loss, continued use of anti-inflammatories and home exercise with no restrictions on activities (Exhibit 10F, p.22).

Dr. Granberry then on November 24, 2004, in discussing the claimant's work activities with her, advised the claimant she could do limited crawling, kneeling, or stooping as long as she did not do any excessive amount of these activities (Exhibit 10F, p.20).

5

At no point in time during Dr. Granberry's treatment was there a statement made that the claimant was totally and permanently disabled or disabled for more than one year.

At Exhibit 10F, p. 15, 16, and 17, there is found a faxed copy of a physical capacities evaluation and pain questionnaire dated November (sic) 15, 2005 which appear to bear Dr. Granberry's signature. The fax date on the faxed copy appears to be June (sic) 16, 2002, and this prompted the Administrative Law Judge to call Dr. Granberry's office for a better copy which, thus far, has not been received. While the physical capacities evaluation is much more restrictive than any of Dr. Granberry's records, the vocational expert in attendance at the hearing found jobs that the claimant could perform even with the physical capacities evaluation restrictions. Moreover, one would assume that pain would be a factor that would be considered in completing the physical capacities evaluation, inasmuch as both documents bear the same date [and] it would hardly seem reasonable that Dr. Granberry would find the claimant able to work in one document and disabled by pain on a second document signed on the same date, especially in view of the fact that records reflect only occasional prescriptions for Darvocet to alleviate pain and no request for stronger pain medication.

Little weight is given to these two documents as neither is supported by Dr. Granberry's records and Dr. Granberry reiterated his ongoing opinion as to the claimant's limitation in his summary letter to the claimant's attorney on November 8, 2006 in which he states on page 4, "Her permanent restrictions for her knees are still in effect; that of no squatting, kneeling, crawling, or stooping. I feel an 8-hour workday 40 hours a week is certainly doable with her knee condition." (Exhibit 14F, p.4).

.     .     .

On August 1, 2006, Dr. William Crotwell, III, a board certified orthopedic surgeon, examined the claimant at the request of the Social Security Administration. The claimant complained of

lumber spine pain and bilateral knee pain. She was able to bend and remove her shoes and socks without any difficulty at all, flexing her legs. There was some crepitance with manipulation of the left knee. The right leg also had some crepitance. An MRI read on December 26, 2005 of the lumbar spine showed left lateral disk bulge at 4-5 with mild nerve root impingement, some facet changes, but no major nerve root impingement. X-rays of the lumbar spine showed some calcification at 2-3 and 3-4 anteriorly, but no major disk space collapse that could be ascertained on the AP and lateral. The assessment of the lumbar spine was mild osteoarthritis. X-ray evaluation of the left and right knee showed some mild joint space narrowing, narrowing bilateral, some mild patellofemoral arthritis. The impressions were lumbar degenerative disc disease with lumbar arthritis and bilateral osteoarthritis of the knees. Dr. Crotwell felt that the claimant could carry out medium, light and definitely sedentary work activities. Except for the mild arthritis of the knees and the lumber spine, Dr. Crotwell thought that the claimant had very minimal orthopedic problems and could carry out work in the range listed. Dr. Crotwell was of the opinion that the claimant could sit for 2 hours at a time, stand for 2 hours at a time, walk for 2 hours at a time, sit for 8 hours during an 8-hour workday, stand for 8 hours during an 8-hour workday and walk for 8 hours during an 8-hour workday. She can continuously lift up to 25 pounds, frequently lift up to 10 (sic) pounds and occasionally lift up to 100 pounds, continuously carry up to 20 pounds, frequently carry up to 25 pounds and occasionally carry up to 50 pounds. Dr. Crotwell felt that the claimant could use her hands for repetitive actions such as simple grasping, pulling (sic) and pulling of arm controls and fine manipulation. She could use both her feet for repetitive movements as in pushing and pulling of leg controls. She could frequently bend, squat, crawl and climb and continuously reach. Dr. Crotwell felt that the claimant had moderate restriction of activities involving unprotected heights, mild restriction of activities involving being around moving machinery and driving automotive equipment and no restriction of activities involving exposure to marked changes in temperature and humidity and exposure to dust, fumes and gases

(Exhibit 13F).

Dr. Granberry, a board certified orthopedic surgeon, who was the primary treating physician for the claimant's knee problems summarized the claimant's problem and limitations with regards to the claimant's knees in a letter dated November 8, 2006 as follows: her current permanent restrictions for her knees are still in effect; that of no squatting, kneeling, crawling or stooping. However, he felt an 8-hour workday 40 hours a week was certainly doable with her knee condition. With regard to the claimant's low back complaints, her primary treating physician was Dr. J.A. Alex Seldomridge, a board certified orthopedic surgeon, who last saw the claimant on August 21, 2006. At the time Dr. Seldomridge recommended conservative, non-operative treatment for the claimant's back condition. He prescribed Soma 350 mg p.o.q.h.s. to try to help her sleep and noted she was currently taking Voltaren. Dr. Seldomridge also recommended physical therapy, four times a week and a home exercise program, range of motion and strengthening. He planned to see her again in two or three months to see how things were doing but no records of any follow-up have been submitted (Exhibit 14F p.1).

.        .        .

In summary, the medical record establishes that the claimant is definitely not precluded from all work activity, and that she is capable of performing work at the medium exertional level. Thus, the Administrative Law Judge finds the claimant has the residual functional capacity to perform medium work activity. The claimant has not alleged any mental impairments which preclude her from performing work at the skilled level of activity.

**6.      The claimant is able to perform past relevant work as a nurse. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**

.      .      .

**7.     The claimant has not been under a "disability," as defined in the Social Security Act, from August 29, 2003 through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 22-23, 23, 24, 25-26, 27, 28 & 29) The Appeals Council affirmed the ALJ's decision (Tr. 6-8) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## <u>DISCUSSION</u>

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id*. at 1005. Once the claimant meets this burden it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Court is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform her past

relevant work as a nurse, is supported by substantial evidence.  Substantial

evidence is defined as more than a scintilla and means such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

"In determining whether substantial evidence exists, we must view the record

as a whole, taking into account evidence favorable as well as unfavorable to

the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th

Cir. 1986).[2]

Although the claimant bears the burden of demonstrating the inability

to return to his past relevant work, the Commissioner of Social Security has an

obligation to develop a full and fair record.  *Schnorr v. Bowen*, 816 F.2d 578,

581 (11th Cir. 1987) (citations omitted).  Social Security Ruling 82-61

recognizes three possible tests for determining whether or not a claimant

retains the capacity to perform his past relevant work.  They are as follows:

> 1.      Whether the claimant retains the capacity
> to perform a past relevant job based on a broad
> generic, occupational classification of that job,
> e.g., "delivery job," "packaging job," etc.[3]

---

[2]      This Court's review of the Commissioner's application of legal principles,
however, is plenary.  *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[3]      As recognized in the ruling, use of this test is likely to be "fallacious and
insupportable" because "[w]hile 'delivery jobs,' 'packaging jobs,' etc., may have a common

    2.    Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.

    3.    Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.[4]

Under § 404.1520(e) of the Commissioner's regulations, a claimant will be found to be "not disabled" when it is determined that she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61.

In this case, the ALJ has relied upon a combination of test two and three above to determine that the claimant can perform her past relevant work as a nurse. (*See* Tr. 28 ("In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the Administrative Law Judge finds that the claimant is able to perform it as actually and generally

---

characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge."

[4]    The Dictionary of Occupational Titles' descriptions can be relied upon to define the job as it is usually performed in the national economy.

performed. The <u>Dictionary of Occupational Titles</u>(DOT) classifies a nurse as a skilled job at the medium level of exertion (DOT # 075.364-010). The vocational expert also testified that the claimant's past work experience as a nurse is medium skilled work. . . . The Administrative Law Judge [] asked the vocational expert whether the hypothetical individual could perform the claimant's relevant work as a nurse. The vocational expert testified that such an individual could perform the job of a nurse."))

Section 404.1520(e) of the Commissioner's regulations requires a review and consideration of a plaintiff's residual functional capacity and the physical and mental demands of the past work before a determination can be made that the plaintiff can perform his past relevant work.  Social Security Ruling 82-62 provides that evaluation under § 404.1520(e) "requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his . . .  PRW to determine whether the individual can still do that work."  *See also Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990) (to support a conclusion that a claimant "is able to return to her past work, the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her impairments").

> The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled."

> .      .      .

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision.  Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

> Sufficient documentation will be obtained to support the decision.  Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work).  Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations.  Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate.  This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source.  Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

SSR 82-62.  In finding that a claimant has the capacity to perform a past relevant job, the decision of the Commissioner must contain among the

13

findings, a finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's residual functional capacity would permit a return to the past job or occupation. *Id.*

The sole argument raised by the plaintiff in this case is that the ALJ committed reversible error by failing to assign controlling weight to the RFC opinion of one of her treating orthopedists, Dr. William Granberry, same indicating that plaintiff could be expected to miss up to 4 days per month due to increased pain (Tr. 385).

It is clear in this circuit that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also Johns v. Bowen*, 821 F.2d 551, 554 (11th Cir. 1987) (same).

> The ALJ must clearly articulate the reasons for giving less weight to the opinion of the treating physician, and the failure to do so is reversible error. We have found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records.

*Lewis, supra,* 125 F.3d at 1440 (internal citations omitted); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("[T]he opinion

14

of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings.").

There is substantial support in the record for the ALJ's rejection of the functional limitations form and pain assessment form completed by Dr. Granberry on or about January 27, 2005. (*Compare* Tr. 25-26 *with* Tr. 385-387) As noted by the ALJ, most of the findings on these forms are not supported by Dr. Granberry's records nor are they supported by the other evidence of record (*compare* Tr. 385-387 *with* Tr. 262-269 7 429-432). Dr. Granberry never indicated, prior to the completion of these forms, that plaintiff's pain was so significant that it would cause her to miss up to 4 days of work per month nor did he ever indicate that plaintiff would have trouble sitting, standing or walking during an 8-hour workday. Instead, the only permanent limitations plaintiff's treating physician noted, which were also consistently noted on the subject physical limitations form, were that Holmes was to perform limited crawling, kneeling and stooping. (*Compare, e.g.,* Tr. 390 ("Ms. Holmes is in today to discuss her work restrictions which are permanent restrictions[:] limited crawling or kneeling or stooping. . . . I do feel that she needs to be able to do some amount of these activities even though

they may be somewhat tender to her as long as she is not doing excessive amount[s] of those activities.") *with* Tr. 385 (during an 8-hour day, plaintiff can climb, stoop, kneel, crouch and crawl for one hour each)) Moreover, it is apparent from the record that these forms were completed on a non-examination date and, therefore, there is no direct linkage between the findings on the forms to plaintiff's impairments. Finally, Dr. Granberry's November 8, 2006 letter statement to plaintiff's attorney that "an 8-hour work day 40 hours a week is certainly doable with her knee condition[,]" contradicts many of the findings made by Dr. Granberry on the two forms. Accordingly, the undersigned finds that the ALJ had good cause for rejecting the functional limitations form and pain assessment completed by Dr. Granberry in January of 2005.

Because the evidence of record (Tr. 262-275, 346-384 & 388-498) supports the ALJ's determination that plaintiff can perform her past relevant work as a nurse,[5] the ALJ's fourth-step determination is due to be affirmed.

---

[5]     Based upon plaintiff's description of the physical requirements of her past relevant work as a nurse with the American Red Cross (Tr. 532-533 ("To lift blood, the ice container with the blood in it to set up blood drives, to walk around to make sure the blood drive is going properly, to draw blood, pack the blood, make sure all the procedure[s] [were] followed for the blood. If there's an emergency, I have to be the one to treat the client, if they have like a seizure, or faint, or whatever from not being able to give the blood.")), the undersigned finds that the evidence of record would support a finding that plaintiff could do this past work even if the ALJ had found that plaintiff would be limited in her ability to climb, stoop, kneel, crouch, or

16

## <u>CONCLUSION</u>

The Court **ORDERS** that the decision of the Commissioner of Social

Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 24th day of September, 2008.

   s/WILLIAM E. CASSADY           
**UNITED STATES MAGISTRATE JUDGE**

---

crawl to one hour each in an 8-hour workday as noted by Dr. Granberry (*see* Tr. 385). Plaintiff did not described activities which would require more than the occasional climbing, stooping, kneeling, crouching and crawling described by Dr. Granberry.